**STATE**

v.

**John F. OUIMETTE.**

83–348–C.A.

Supreme Court of Rhode Island.

June 19, 1984.

Dennis J. Roberts II, Atty. Gen., John A. Murphy, Sp. Asst. Atty. Gen., for plaintiff.

William M. Kunstler, Kunstler & Mason, New York City, Allegra E. Munson, Warwick, for defendant.

## OPINION

SHEA, Justice.

The defendant, John F. Ouimette, was sentenced to forty-five years in prison with fifteen years suspended after a conviction for being an accessory before the fact in the commission of the so-called Bonded Vault robbery. This sentence, a reduction of the life sentence originally imposed, was imposed after the defendant had moved for reduction under Rule 35 of the Superior Court Rules of Criminal Procedure.[1] The defendant appealed the imposition · of the reduced sentence and also rulings on his Rule 35 motion and on his motion to reconsider. We affirm.

---

1. Rule 35 of the Superior Court Rules of Criminal Procedure (before it was amended by the Rhode Island Supreme Court on November 9, 1982) states:

"The court may correct an illegal sentence at any time. The court may correct a sentence imposed in an illegal manner and it may reduce any sentence within one hundred

The facts surrounding defendant's conviction are set forth in this court's opinion upholding the conviction in *State v. Byrnes*, R.I., 433 A.2d 658 (1981). On August 12, 1981, defendant filed a motion in the Superior Court pursuant to Rule 35 for a reduction of the life sentence imposed by the trial justice subsequent to defendant's conviction.[2] A three-judge panel was appointed by the presiding justice of the Superior Court to hear and decide defendant's motion.[3] Hearings were held before the panel on June 30, 1982, November 3, 1982 and March 8, 1983. The panel entered an order granting defendant's motion to reduce his life sentence and resentenced him to forty-five years with fifteen years suspended and fifteen years' probation upon his release. The defendant then filed a motion for reconsideration, which was denied by the panel. The defendant has appealed the rulings on his motion for a reduction of sentence and motion for reconsideration.

The defendant raises five issues,[4] the first three of which involve the appropriateness of the sentence imposed. The defendant also challenges the denial of his motion for reconsideration and the participation of Supreme Court Associate Justice Kelleher and Justice Murray in this appeal.

## I

### A

The defendant challenges, on three grounds, the sentence of forty-five years

with fifteen years suspended. He claims, first, that it is unjustified and disparate from sentences generally imposed and therefore constitutes an abuse of discretion by the three-judge panel; second, that the sentence constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States; and third, that the sentence violates the requirement of proportionate sentencing in the Rhode Island Constitution, art. I, sec. 8.

Our review of the trial court's decision on defendant's Rule 35 motion is governed by standards that are well settled and relatively simple. This court's role in reviewing the sentence imposed is limited. There is a strong policy against interference with the discretion exercised by the trial court. We shall modify its determination or overturn it only when the sentence is manifestly excessive. A manifestly excessive sentence is a sentence disparate from sentences generally imposed for similar offenses when the heavy sentence imposed is without justification. *State v. Upham*, R.I., 439 A.2d 912, 913 (1982); *State v. Crescenzo*, 114 R.I. 242, 263, 332 A.2d 421, 433 (1975); *State v. Fortes*, 114 R.I. 161, 173, 330 A.2d 404, 411 (1975). The defendant has the burden of supporting his contention that the sentence imposed on him was violative of this standard. *State v. Giorgi*, 121 R.I. 280, 282, 397 A.2d 898, 900 (1979).

An accused convicted of aiding, assisting or abetting another to commit any crime

twenty (120) days after the sentence is imposed, or within one hundred twenty (120) days after receipt by the court of a mandate of the Supreme Court of Rhode Island issued upon affirmance of the judgment or dismissal of the appeal, or within one hundred twenty (120) days after receipt by the court of a mandate or order of the Supreme Court of the United States issued upon affirmance of the judgment, dismissal of the appeal, or denial of a writ of certiorari. The court may reduce a sentence, the execution of which has been suspended, upon revocation of probation."

**2.** *Rule 35* motions were also filed by two code-fendants, Charles J. Flynn and Ralph S. Byrnes.

The decision of the three-judge panel as it pertains to them has not been appealed.

**3.** The appointment of the three-judge panel was upheld after the issue of its propriety and certain procedural questions were certified to this court by the panel. *State v. Byrnes*, R.I., 456 A.2d 742 (1983).

**4.** The final issue, concerning defendant's objection to the participation of attorney John A. Murphy for the state, was denied by this court before oral arguments on the appeal. *State v. Byrnes*, 433 A.2d 658 and *State v. Ouimette*, No. 83–348–C.A. (R.I. filed October 3, 1983).

runs the risk of receiving a punishment similar in magnitude to that of the principal offender. General Laws 1956 (1981 Reenactment) § 11–1–3. The statutory penalty for the crime of robbery runs from a minimum of five years up to a maximum of life imprisonment. Section 11–39–1. It is within this range of penalties that the trial court must sentence defendant, who was convicted of aiding and abetting in the crime of robbery.

A committee appointed by Chief Justice Bevilacqua, composed of justices of the trial court and attorneys knowledgeable in criminal law, under the chairmanship of Justice Kelleher completed a study of sentences and proposed to the court a report on benchmarks for sentencing to "establish a set of consistent sentencing standards in Superior Court and reduce the potential for sentencing disparity." Sentencing Study Committee, Rhode Island Supreme Court, *Report of The Sentencing Study Committee*, Appendix C (January 1981). The benchmarks were adopted by the Superior Court as policy, to serve as a guide to the trial court by offering a suggested range of sentences for a particular crime under various circumstances. The benchmark applicable in this case appears to be No. 15—armed robbery with accompanying acts of violence. An example of an "accompanying act of violence" listed in the notes to benchmark No. 15 is "restraining of a victim or bystander by tying up the person, etc." *Id.* The record reveals that the robbery took place at gunpoint and that a number of people were locked in a room with pillowcases over their heads. In view of these facts, we conclude that benchmark No. 15 would have been the applicable guide to assist the trial court in sentencing defendant.

Under benchmark No. 15 the suggested sentence for this crime is "20 years (imprisonment) and up." The sentencing report states that the benchmarks represent the suggested range of time to be served in jail for a defendant with no criminal history. *Id.* John Ouimette was sentenced to forty-five years with fifteen years suspended, resulting in a total of thirty years to be served in jail. This leads this court to conclude that the sentence imposed by the three-judge panel was not disparate and that therefore there would be no justification for this court to overturn or modify it on that ground.

Assuming for the purpose of argument only that the sentence was disparate from others imposed for the crime involved, we feel that it was imposed with some justification. There are several relevant considerations that the trial court may legitimately take into account in determining the appropriateness of a sentence to be imposed. The trial justice may consider the severity of the crime, the possibility of rehabilitation, the deterrence to others, and the appropriateness of the punishment for the crime involved. *State v. Upham*, R.I., 439 A.2d at 913. Further, there is nothing improper in the trial justice's taking into account the fact that the theft involved a very substantial sum of money. *State v. Crescenzo*, 114 R.I. at 264, 332 A.2d at 433. Since deterrence is one of the legitimate considerations any sentencing judge should consider, the amount stolen might well have an impact on the kind of sentence that would serve to deter others.

The magnitude of the bonded vault robbery is well known. The following short passage from this court's decision in *State v. Byrnes*, R.I., 433 A.2d at 661, emphasizes this point:

"On the morning of August 14, 1975, nine masked men entered the Bonded Vault Co., * * * a commercial safe-deposit company located in Providence. After allegedly robbing several Bonded Vault employees at gunpoint, the masked men proceeded to break into 146 of the 148 safe-deposit boxes located in the vault. They garnered approximately $4 million in cash and valuables from the robbery of the guards and the entry into the deposit boxes."

The evidence at trial revealed that defendant Ouimette helped conceive and plan

the robbery with his codefendants. His involvement in the crime appears to have been integral and essential. In no way does the fact that he was not present at the scene of the crime mitigate his culpability in this case. We conclude that compelling justification existed for the three-judge court hearing the Rule 35 motion for reduction to impose a thirty-year jail term.

B

The defendant next asserts that the sentence imposed violates the Eighth and Fourteenth Amendments to the Constitution of the United States and art. I, sec. 8, of the Rhode Island Constitution. We begin by noting that the two provisions are identical. Rhode Island's constitution adds the clause that "all punishments ought to be proportioned to the offense," and the Eighth Amendment to the Federal Constitution has been interpreted to prohibit "sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, ——, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637, 645 (1983).

■■■■ Our proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for the commission of the same crime in other jurisdictions. *Id.* at ——, 103 S.Ct. at 3010, 77 L.Ed.2d at 649. Rhode Island's constitutional clause should be interpreted using the first two criteria stated above.

There is no dispute that the armed robbery, accomplished at gunpoint, of approximately $4 million from 146 safe-deposit boxes, with the consequent danger to the lives of persons present when the robbery occurred, is a serious crime. The amount of money involved, the number of individuals who participated, the number of people who suffered losses, and the complexity of the execution of the crime are all indications of the gravity of the offense. In light of these factors and our review of the record, we do not conclude that a thirty-year jail term is excessively harsh.

The second criterion to consider is the sentence imposed on other criminals convicted of the same offense in the same jurisdiction. The defendant points to a statistical compilation showing the sentences imposed upon defendants in the Superior Court in Rhode Island from January 1977 to August 1980. The defendant claims that the statistics show an average sentence of 6.5 years for similar offenses in Rhode Island. The state claims that the average prison sentence imposed upon persons convicted of robbery after a plea of not guilty and a trial during the period covered by the exhibit was 59.5 years and that the average sentence imposed on persons convicted of robbery, whether after trial or upon guilty or nolo pleas, was 17.6 years. Our review of the exhibit [5] before the sentencing panel shows only two defendants who were tried and convicted of robbery during the period. One defendant was convicted of five counts of robbery and received a ninety-nine-year jail term for each count. The other defendant was convicted of robbery and received a twenty-year jail term. We can hardly say, on the record before us, that defendant's thirty-year jail term is grossly disproportionate to sentences other defendants have received for similar types of offenses. This exhibit establishes that defendant's time to serve is between the extremes and definitely on the low side.

The final criterion for review of an alleged federal constitutional challenge to a sentence is the length of the sentences imposed for similar offenses in other jurisdictions. Although there is nothing in the record before this court that deals with this criterion, we note that our sister state of

---

5. The exhibit is a computer printout entitled "Superior Court Sentence Register—Sentences Imposed for the period 01/01/77 to 07/31/80."

It appears to have been generated by the state's judicial-information systems.

Massachusetts imposes a similar penalty for the crime of robbery.[6]

## II

■ The defendant filed a motion for reconsideration with the three-judge panel wherein he requested that a hearing be held on the motion. The panel denied the motion for reconsideration. The defendant claims that the failure to grant him a hearing on the motion was an abuse of discretion. We disagree, and defendant has presented neither argument nor authority that would support his position.

The defendant had adequate opportunity to be heard before the panel deciding his Rule 35 motion. Counsel for defendant was not limited in the amount or type of evidence he could have introduced or the arguments and pleas he wished to make. The panel's denial of his reconsideration motion without a hearing, on the record before us, was not an abuse of its discretion.

■ The required review of the motion by the three-judge panel is extremely limited. As we stated in *State v. Byrnes*, R.I., 456 A.2d 742, 745 (1983):

"It is significant for purposes of this review also to point out that on a motion for reduction of sentence, the sentencing court has the discretion to decide whether to hear testimony or arguments. Furthermore, the court need not state its reasons for granting or denying the motion. If the court does decide to reduce the sentence, the defendant need not be granted the right of allocution, nor need he or she even be present when the reduced sentence is imposed. (Footnote omitted.) 3 Wright, *Federal Practice and Procedure: Criminal* § 586 at 405–07 (1982)."

The opportunity to be heard given this defendant by the panel went beyond the minimum requirements we set out above. The denial of a second hearing after the panel had rendered its decision is therefore not an abuse of its discretion.

## III

■ Finally, the defendant has moved that Justice Kelleher and Justice Murray recuse themselves from participation in this appeal. We find nothing in the record that would require the justices to recuse themselves. Their concurring opinions, in which we join, contain their individual responses to these motions.

For these reasons, the defendant's appeal is denied and dismissed, the judgments appealed from are affirmed, and the papers of the case are remanded to the Superior Court.

BEVILACQUA, C.J., did not participate.

KELLEHER, Justice, concurring.

The sole purpose of this concurrence is to respond to the defendant's motion that I recuse myself from any participation in the consideration of his appeal because of remarks I allegedly made at a disciplinary hearing when one of his counsel in this appeal appeared before this court to show cause why she should not be disciplined after pleading to a criminal charge of attempted larceny of three sets of motor-vehicle registration plates from the Adult Correctional Institutions (ACI). The incident at the ACI is further described in *Carter v. Munson*, R.I., 452 A.2d 309 (1982).

The defendant's motion affords me the opportunity to highlight the major considerations that govern my participation in disciplinary hearings. They are (1) should discipline be imposed? and (2) what motivates the attorney to engage in activity that can result in the loss of one's license to practice law? This last factor played a major role in my questioning of Ms. Munson at the show-cause hearing, having in mind the many years she served with dis-

---

6. Mass.Gen.Laws Ann. ch. 265, § 17 (West 1980).

tinction as a member of the Public Defender's staff.

At the hearing, I made two inquiries of Ms. Munson; the gist of each concerned her relationship, if any, with the defendant. Her negative responses made me well aware that my motivational inquiries were getting nowhere, and I announced that I would recuse myself from any further participation in the hearing. My recusal was based on a belief that had I continued to participate and reached the point where I thought discipline should be imposed, such a conclusion on my part might be viewed by Ms. Munson as a manifestation of my supposed displeasure with her friendship with the defendant rather than a proper response to the evidence adduced at the hearing. *State v. Clark*, R.I., 423 A.2d 1151 (1980), stressed that judges have as great an obligation not to recuse themselves when there is no reason to do so as they have to do so when the occasion does arise. At no time during that hearing did I say anything to Ms. Munson or her attorney which would warrant my recusing myself from consideration of the appeal presently before this court.

MURRAY, Justice, concurring.

I join the opinion of the majority and write to respond, on behalf of the court, to the defendant's motion that I disqualify myself from participating in this appeal. The defendant asserts that both by reason of my marriage to the former U.S. Attorney and because of the fact that I wrote the opinion for the court in *State v. Byrnes*, R.I., 433 A.2d 658 (1981), I have bias and prejudice in this matter.

No bias or prejudice inheres from the record, nor has the defendant proven such bias or prejudice. There exists no impediment to my ability to act with complete impartiality in resolving the issues between the defendant and the State of Rhode Island in the instant matter. Therefore, I decline to recuse myself.